**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TONYA L. OAKS and ISHA WESTERN<br>Plaintiffs,<br><br>v.<br><br>AMERIPATH, INC.,<br>AMERIPATH MARKETING USA, INC.,<br>AMERIPATH TEXAS, LP, and<br>AMERIPATH, LLC,<br>Defendants. | CIVIL ACTION<br>FILE NO. H-06-2880<br><br>JURY DEMANDED |

## PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

NOW COME PLAINTIFFS, TONYA L. OAKS ("Ms. Oaks") and ISHA WESTERN ("Ms. Western") (collectively, "Plaintiffs"), and for cause of action against AMERIPATH, INC., AMERIPATH MARKETING USA, INC., AMERIPATH TEXAS, LP, and AMERIPATH, LLC (hereinafter referred to as "AmeriPath" or "Defendants") allege and show to the Court as follows:

### I.
### INTRODUCTION

1.   This action seeks equitable relief, compensatory and punitive damages, liquidated damages, attorney's fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for race, color, national origin, gender and age discrimination, and retaliation, Plaintiffs suffered regarding the terms and conditions of their employment.

1

## II.
## PARTIES

2.  Plaintiff, TONYA L. OAKS, is a 36-year-old African-American female citizen of the United States.

3.  Plaintiff, ISHA WESTERN, is a 42-year-old African-American female citizen of the United States.

4.  Defendant, AMERIPATH, INC., is a publicly traded Delaware corporation doing business in the state of Texas. This Defendant may be serviced with summons by serving its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.  Defendant, AMERIPATH MARKETING USA, INC., is a validly existing Florida corporation doing business in the state of Texas. This Defendant may be serviced with summons by serving its registered agent, Corporation Service Company, at 1201 Hays Street, Tallahassee, Florida 32301.

6.  Defendant, AMERIPATH TEXAS, LP, is a validly existing Delaware corporation doing business in the state of Texas. This Defendant may be serviced with summons by serving its registered agent, Corporation Service Company, at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

7.  Defendant, AMERIPATH, LLC, is a validly existing Delaware corporation doing business in the state of Texas. This Defendant may be serviced with summons by serving its registered agent, Corporation Service Company, at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

8.  Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees

committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## III.
## JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. §1331 (federal question) because Plaintiffs bring this claim pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA").

10. The Court has personal jurisdiction because each Defendant maintains sufficient minimum contacts with the State of Texas.

11. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these causes of action occurred in the Southern District of Texas.

12. This Court has supplemental jurisdiction over all pendant state claims pursuant to 28 U.S.C. §1367.

## IV.
## PROCEDURAL REQUISITES

### Tonya Oaks

13. Plaintiff Oaks filed a charge of race, color, gender, and national origin discrimination against Defendants under Charge Number 330-2006-01221 with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR") on November 14, 2005.

14. On August 9, 2006, the EEOC issued a Dismissal and Notice of Rights letter entitling Plaintiff Oaks to file an action in this Court for race, color, sex, and national origin discrimination.

15. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff Oaks' receipt of the Dismissal and Notice of Rights letter.

16. All conditions precedent to filing this cause of action have been met as to Plaintiff Oaks.

### Isha Western

17. Plaintiff Western filed a charge of race, color, national origin, gender, and age discrimination, and retaliation, against Defendants under Charge Number 520-2006-00177 with the EEOC on January 10, 2006.

18. On July 17, 2006, the EEOC issued a Dismissal and Notice of Rights letter entitling Plaintiff Western to file an action in this Court for race, color, national origin, gender, and age discrimination, and for retaliation.

19. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff Western's receipt of the Dismissal and Notice of Rights letter.

20. All conditions precedent to filing this cause of action have been met as to Plaintiff Western.

### V.
### FACTS

21. Defendants claim to be one of the leading anatomic pathology practices in the United States, offering a broad range of testing and information services used by physicians in the detection, diagnosis, evaluation and treatment of cancer and other diseases and medical conditions.

### Tonya Oaks

22. During Plaintiff Oaks' employment with Defendants, she was subjected to discrimination based on race, color, national origin, and gender, all in violation of Title VII of the Civil Rights Act of 1964.

23. Ms. Oaks began her employment as a 'Territory Manager' with AmeriPath on May 15, 2002, and worked for AmeriPath until her wrongful job termination on November 17, 2005.

24. Plaintiff's duties as Territory Manager included marketing and selling AmeriPath's pathology services to specialized client groups including urologists, gastroenterologists, gynecologists, and oncologists.

25. During her employment with AmeriPath, Plaintiff served the southwest and north parts of Houston, Texas, as well as Katy, Texas.

26. In mid-December 2004, Ms. Oaks began reporting to the Southwest Regional Sales Manager, Mr. Joseph W. Haas.

27. Mr. Haas was promoted in August 2005 to Vice President Southwest Region.

28. As a result of Mr. Haas' promotion, Ms. Oaks began reporting to Mr. Lee Rourk, who was promoted to the Southwest Regional Sales Manager position.

29. Prior to this time, Mr. Lee Rourk worked as Territory Manager at AmeriPath's Florida location.

30. Prior to being promoted to the Southwest Regional Sales Manager position, Mr. Lee Rourk was a 'Territory Manager' just like Ms. Oaks.

31. At the time of Ms. Oaks' employment termination, AmeriPath had approximately 40 Territory Managers nationwide in the sales group Ms. Oaks worked for.

32. Of these approximately 40 Territory Managers, Ms. Oaks was one of the only two African-American female Territory Managers.

33. Additionally, for a duration of time, Ms. Oaks was the only African-American Territory Manager at AmeriPath.

34. Ms. Oaks' group also inherited two African-American male Territory Managers, not by AmeriPath's hiring, but because of a corporate acquisition.

35. At the time of Ms. Oaks' employment termination, Ameripath's other sales group known as DermPath had in excess of 40 Territory Managers.

36. At the time of Ms. Oaks' employment termination, none of DermPath's 40 plus Territory Managers were African-American.

37. During Ms. Oaks' employment with AmeriPath, the only other African-American female Territory Manager, Ms. Isha Western, worked out of AmeriPath's New Jersey office.

38. Like Ms. Oaks, Ms. Western was also singled out and wrongfully fired on August 19, 2005, because of her race, color, national origin, gender, and age.

39. In Houston, AmeriPath hired Ms. Oaks as the first Territory Manager.

40. Later, AmeriPath hired Ms. Stefanie Marsh (Caucasian female), at which time some of Ms. Oaks' clients and territories were taken away and handed to Ms. Marsh.

41. Ms. Marsh became responsible for the territories encompassing (i) the Houston Medical Center and (ii) Pasadena, Texas to Galveston, Texas.

42. In April 2005, Ms. Missy Lilienstern (Caucasian female) was transferred within AmeriPath and she became an additional Territory Manager.

43. In April 2005, AmeriPath again split the territory Ms. Oaks served, and took away approximately 80% of Ms. Oaks' clients that she had developed over the years with significant hard work and effort. Ameripath handed these territories and clients to Ms. Lilienstern.

44. In April 2005, AmeriPath did not take any of the territories or clients (i.e., from the Houston Medical Center, or from any place in Pasadena to Galveston) belonging to the other Houston Territory Manager, Ms. Marsh, to give to Ms. Lilienstern.

45. Prior to AmeriPath reassigning Ms. Oak's clients to Ms. Lilienstern, Ms. Oaks continued to receive compensation each year from commissions relating to these clients.

46. As a result of the reassignment, AmeriPath without justification took away some of the rightful commissions owed to Ms. Oaks.

47. No company policy exists or has existed in the past at AmeriPath that allows for the taking away of territories or clients from a Territory Manager and giving those territories or clients to another Territory Manager.

48. Prior to Ms. Lilienstern receiving Ms. Oaks' territories and clients, Ms. Lilienstern had not produced any sales for AmeriPath.

49. After repeated requests, Ms. Oaks was given no reason or justification on how AmeriPath went about in its decision to take away Ms. Oaks' clients.

50. When Ms. Oaks complained about this unfair treatment, AmeriPath began retaliating against her.

51. AmeriPath began misrepresenting and under-reporting Plaintiff's sales in 2005.

52. Ms. Oaks repeatedly brought this under-reporting of 2005 sales to AmeriPath's attention, as she knew her sales figures were higher and that Defendants were publishing incorrect sales numbers.

53. AmeriPath did nothing to correct the under-reporting of Ms. Oaks' 2005 sales numbers.

54. In fact, Ms. Oaks' commissions were based on these erroneously low numbers and as a result, Plaintiff was vastly underpaid.

55. Plaintiff was also, in error, punished for these allegedly low numbers, and was wrongfully pressured to generate more sales.

56. This occurred despite the fact that in the previous year (2004), Ms. Oaks was a top producer and had earned one of the highest compensations among her peers equaling approximately $208,000 for 2004.

57. Additionally, in 2003, Ms. Oaks' efforts were recognized and AmeriPath gave her the coveted "Territory Manager of the Year Award".

58. Plaintiff's boss, Mr. Joseph W. Haas (Caucasian male) was AmeriPath's Southwest Regional Sales Manager from mid-December 2004 until August 2005.

59. Mr. Haas was promoted in August 2005 to Vice President Southwest Region.

60. Mr. Haas' former position of Southwest Regional Sales Manager became available in Houston.

61. On August 24, 2005, Ms. Oaks applied for this position of Southwest Regional Sales Manager.

62. Shortly thereafter, Ms. Oaks interviewed for the position with the president of AmeriPath's western region, Dr. Stephen Aldred.

63. During the interview, Dr. Aldred discouraged Ms. Oaks from obtaining the position.

64. Also during the interview, Dr. Aldred told Ms. Oaks that suddenly the Southwest Regional Sales Manager position would require extensive travel and that he wanted Plaintiff to be sure that she understood that because she has a family.

65. Shortly thereafter, Ms. Oaks was told that the position of Southwest Regional Sales Manager had been eliminated.

66. However, despite the fact that Plaintiff was more familiar with the Texas region sales territories of AmeriPath, and despite the fact that Plaintiff had an excellent sales growth record for the company in this region, AmeriPath chose to hire Lee Rourk (Caucasian male), who became the new Southwest Regional Sales Manager.

67. Prior to this time, Lee Rourk had mostly worked as Territory Manager (same as Plaintiff) at AmeriPath's Florida location, and any time Mr. Rourk may have spent in Florida as a manager was insignificant and did not provide the kind of in-depth local territory knowledge Ms. Oaks possessed.

68. Mr. Rourk became the Southwest Regional Sales Manager in early September 2005 and fired Ms. Oaks on October 18, 2005.

69. Clearly, when Mr. Rourk fired Ms. Oaks, he did not have enough time to make any kind of reasonable assessment of Plaintiff's job performance to make a decision to terminate her employment.

70. After Ms. Oaks' departure, on or about December 1, 2005, AmeriPath filled Plaintiff's position with a Caucasian female named Jody Terran, who took over Ms. Oaks' sales areas and clients.

71. Further, Ms. Stefanie Marsh now occupies the Southwest Regional Sales Manager position (i.e., the one that (i) suddenly required travel when Ms. Oaks showed interest in it, (ii) was eliminated shortly after Ms. Oaks interviewed for it, and (iii) was then filled with a Caucasian male, Lee Rourk).

### Isha Western

72. During Plaintiff Western's employment with Defendants, she was subjected to discrimination based on her race, color, national origin, and gender, in violation of Title VII of the Civil Rights Act of 1964, and based on age in violation of the ADEA. Plaintiff Western has also suffered from retaliation in violation of Title VII.

73. Ms. Western began her employment as 'Account Manager' with the Dermpath Diagnostics Pathology Associates division of AmeriPath (formerly known as Pathology Associates, LLC) on August 21, 2000, and worked for AmeriPath until her wrongful job termination on August 19, 2005.

74. Her duties as Account Manager, and later as Territory Manager, included marketing and selling AmeriPath's pathology services to specialized client groups including dermatologists, plastic surgeons and podiatrists.

75. Plaintiff Western served AmeriPath's Northeast region, including New Jersey and New York.

76. In December 2004, AmeriPath acquired Pathology Associates, LLC, and Ms. Western's employment continued from Pathology Associates LLC to AmeriPath at this time.

77. AmeriPath employed approximately 40 Territory Managers nationwide in the sales group Plaintiff Western worked for.

78. This sales group was known as DermPath, of which Ms. Western was the only African-American female Territory Manager.

79. Another sales group known as AmeriPath had in excess of 40 Territory Managers, of whom only one was African-American – Ms. Tonya Oaks, Plaintiff herein.

80. Ms. Oaks worked out of AmeriPath's Houston office.

81. Like Ms. Western, Ms. Oaks was also singled out and wrongfully fired on November 17, 2005, because of her race, color, national origin, and gender.

82. The two African-American Territory Managers (Ms. Western and Ms. Oaks) were not given the same opportunities as other Territory Managers who were (i) not African-American and/or (ii) not female.

83. To no avail, on several occasions Plaintiff Western complained to AmeriPath of the discrimination she was suffering because of on her race, color, national origin, age and gender.

84. The most recent complaint of discrimination Ms. Western made was on August 10, 2005, to Ms. Sharon Sutton of Human Resources at AmeriPath.

85. Prior to that, in July 2004, Ms. Western's supervisor, Mr. Len Fostbrook, informed her that her co-worker Glen Roberts will become her new boss.

86. When Plaintiff Oaks asked why the job was not posted internally so that she could have applied for it, Mr. Fostbrook replied: "Don't you want a big man [Glen Roberts] to take care of your problems?"

87. Ms. Western then complained to the Executive Director of Operations, Ms. Marie Gregiore, of the fact that she was not allowed to apply for the position and was thus denied a promotion, as well as Mr. Fostbrook's above stated offensive gender-based comment.

88. Again, nothing was done, and Ms. Western's employer did not investigate the ongoing discrimination.

89. Finally after Plaintiff Western's repeated requests, Ms. Gregiore organized a meeting in October 2004 between Ms. Western, Ms. Gregiore, Mr. Fostbrook, and Mr. Roberts to address Plaintiff's complaints of discrimination.

90. Instead of addressing any of Ms. Western's discrimination concerns, she was instead written up for authoring 'too many memos'.

91. Therefore, when Ms. Western complained about the unfair treatment toward her, AmeriPath began retaliating against her.

92. The retaliation occurred despite the fact that Ms. Western was a top producer for AmeriPath, earning approximately $130,000 per year in salary and commissions.

93. In January 2005, after AmeriPath acquired Pathology Associates, LLC, Ms. Western was immediately placed on probation, indefinitely, by Mr. Tim Robinson (white male).

94. Ms. Western then continued to work for Mr. Robinson and continued to ask him why she was on probation and when the probation would end.

95. Plaintiff Western was given no clear guidance in this regard.

96. Even though Ms. Western was the only employee in her group who qualified for a bonus during the first and second quarters of 2005 as a result of being one of the highest performers during these quarters (approximately $15,000 bonus per quarter), no such bonus was given to her.

97. At the time of Ms. Western's termination from AmeriPath, she had 20+ years of sales experience and a Masters in Business Administration degree.

98. Very few, if any, of Ms. Western's co-worker Territory Managers possess an MBA degree.

99. Ms. Western was the second most senior sales representative at AmeriPath.

100. Plaintiff was more experienced than any of her colleagues at AmeriPath, nevertheless, she was denied a promotion and was terminated while other Caucasian and/or male employees were not.

101.  The sole reason given for Ms. Western's termination was downsizing.

102.  Ms. Western was the only person that was let go in such 'downsizing'.

103.  The accounts Plaintiff Western had developed through hard work and skill were then handed for servicing to two Caucasian employees, Kimberly Campbell and Kevin (last name unknown).

104.  Ms. Campbell and Kevin are Caucasian, and both are in their late 20's / early 30's. As such each is significantly younger than Ms. Western.

105.  Further, in the last two years of her employment, and continuing beyond the date of her termination, AmeriPath's hiring trend of Territory Managers indicates a preference for persons much younger than 40 years old.

106.  Susan Franks filled Ms. Western's position at AmeriPath.

107.  Ms. Franks is a 24-year-old Caucasian female.

108.  AmeriPath has discriminated against Ms. Western based on her age, by hiring Territory Managers, including her replacement, who are significantly younger than 40 years in age and significantly younger than Ms. Western.

## VI.
## CAUSES OF ACTION

### Both Plaintiffs

### Race, Color, Gender and National Origin Discrimination in Violation of 42 U.S.C. § 2000e, et seq.

109.  Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

110.  Plaintiffs are an African-American females.

111. Because of each Plaintiffs' (i) race, (ii) color, (iii) gender and (iv) national origin, she belongs to a group of persons that 42 U.S.C. § 2000e, *et seq.* (Title VII of the 1964 Civil Rights Act, as amended) intended to protect against discrimination in the terms and conditions of employment.

112. By the above-described acts, Defendants discriminated against Ms. Oaks and Ms. Western because of their race, color, gender and national origin, by tolerating and failing to take affirmative action to correct these unlawful employment practices, by discriminating against each Plaintiff with respect to terms, conditions and privileges of her employment because of her race, color, gender and national origin, through denial of her employment rights and benefits, promotions and achievement, and by terminating her, all in violation of 42 U.S.C. § 2000e, *et seq.* (Title VII of the 1964 Civil Rights Act as amended).

113. Further, Defendants acted with reckless indifference to the federally protected rights of each Plaintiff.

114. At all relevant times, each Plaintiff was qualified for her position with Defendants, and her job performance was exemplary.

115. Each Plaintiff was treated differently than others outside their protected class, and each Plaintiff suffered discrimination because of her race, color, gender and national origin.

116. Because of Defendants' discriminatory actions, each Plaintiff has suffered adverse employment action, including her termination; each Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

**Race Discrimination in Violation of 42 U.S.C. § 1981**

117.   Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

118.   Each Plaintiffs' race is African-American, and each therefore belongs to a group that 42 U.S.C. § 1981 intended to protect.

119.   By the above-described acts, Defendants discriminated against each Plaintiff because of race by tolerating and failing to take affirmative action to correct these unlawful employment practices, by discriminating against each Plaintiff with respect to terms, conditions and privileges of her employment because of her race, through denial of her employment rights and benefits, promotions and achievement, and by terminating her all in violation of 42 U.S.C. § 1981.

120.   Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of each Plaintiff.

121.   As a result of Defendants' discriminatory actions, each Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

**Racial Harassment**

122.   Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

123.   Each Plaintiffs' race and national origin is African, a group that 42 U.S.C. § 1981 intended to protect.

124.   As such, each Plaintiff is a member of an ethnic group that is, and is commonly perceived as being, ethnically and physiognomically distinct.

15

125. Defendants' harassment and ill-treatment of each Plaintiff violates 42 U.S.C. § 1981, for which the Plaintiffs request compensatory and punitive damages.

126. These circumstances were sufficient to create a hostile work environment for each Plaintiff.

**Plaintiff Western's Additional Causes of Action**

**Age Discrimination**

127. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

128. By the above acts, and others, Defendants have violated The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, by treating Ms. Western in a discriminatory manner on the basis of her age.

129. Defendants' actions demonstrate that they have engaged in discriminatory practices with malice or with reckless indifference to Ms. Western's federally protected rights.

130. Ms. Western has been denied opportunities to which she was entitled and such benefits and privileges that she would have received if she had not been intentionally discriminated against by Defendants.

131. Ms. Western will suffer future pecuniary losses because of lost or delayed opportunities.

132. Ms. Western is now suffering and will continue to suffer past and future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

133. These irreparable injuries and monetary damages are the direct result of Defendants' discriminatory practices and they will in all likelihood continue unless and until the Court grants relief.

**Retaliation**

134. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

135. Plaintiff Western made numerous complaints of discrimination.

136. These acts are protected activity.

137. Defendants knew of Ms. Western's complaints.

138. After Plaintiff Western submitted these internal complaints of discrimination, Defendants engaged in activities in retaliation for her charges as outlined above.

139. As a result of Defendants' retaliatory actions, Plaintiff Western has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in all probability will continue to suffer in the future.

## VII.
## DAMAGES

140. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

141. As a result of Defendants' violations of Title VII, ADEA and other statutes, Plaintiffs seeks the following damages: (1) back pay, including wages and benefits; (2) reinstatement or front pay, including benefits; (3) reasonable expert witness fees, and other costs of the action; (4) pre-judgment and post-judgment interest, and (5) other and further relief as the court deems appropriate under the circumstances.

## VIII.
## ATTORNEY'S FEES

142. In addition, as a result of the acts and omissions of Defendants, as specifically set forth herein, it was necessary for each Plaintiff to secure counsel to present and prosecute this matter on their behalf.

143. Plaintiffs have retained the services of the undersigned counsel of record, and accordingly, Plaintiffs sue for reasonable attorney's fees as provided by Title VII, ADEA and other statutes.

## IX.
## JURY DEMAND

144. Plaintiffs make a formal demand for a jury trial in this matter.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, cause having been shown, Plaintiffs pray that the Court enter a judgment:

　　a.　For actual and liquidated damages for the period of time provided by law, including appropriate back-pay and reimbursement for lost pension, insurance, severance and all other benefits incident to each Plaintiff's employment;

　　b.　For reinstatement, or for front pay including benefits, in lieu of reinstatement;

　　c.　For compensatory and punitive damages for the willful, wanton, malicious and conscious disregard for the federally protected rights of Plaintiffs;

　　d.　For Defendants to take affirmative steps as are necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Ms. Oaks' or Ms. Western's employment opportunities;

　　e.　For pre-judgment and post-judgment interest at the highest rates allowed by law;

　　f.　For the costs of the action, together with reasonable attorneys' fees; and

　　g.　Granting any further relief as the Court deems necessary and proper.

Respectfully submitted,

**ALI S. AHMED, P.C.**

By: _____
Salar Ali Ahmed
Federal Id. No. 32323
State Bar No. 24000342
1301 Travis Street, Suite 1200
Houston, Texas 77002
Telephone: (713) 223-1300
Facsimile: (713) 547-8910

**ATTORNEY FOR PLAINTIFFS
TONYA L. OAKS and ISHA WESTERN**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was forwarded on October 13, 2006, in the prescribed manner to:

*(Via CMRRR No. 7003 1680 0000 9212 8821)*
Mr. Victor N. Corpuz
Jackson Lewis LLP
3811 Turtle Creek Blvd., Suite 500
Dallas, Texas 75219

_____
Salar Ali Ahmed

19